## JOHN HOLMES v. J. O. FROST'S SONS.

ERROR TO THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

Argued March 21, 1889—Decided April 8, 1889.

*(a)* A employed B to carry on a business for him. On the determination thereof, B gave A a bond conditioned upon his delivering to A the books and accounts, and paying to him " any balance that shall appear due to said A, after an examination of the books and accounts, and an inventory of the stock in said store; the said examination to be concluded within two months from this date; the said B shall render all needful instructions and information in the proper settlement of said business and accounts."

*(b)* In a suit on this bond against B, and C, the surety on the bond, a voluntary nonsuit was suffered upon the suggestion of the court that the bond contemplated an examination of the accounts by both parties and something ascertained between them. An action of account render was then instituted by A against B alone, and a judgment for $1,207.29 rendered therein. Subsequently this action of covenant was brought on the bond, by A against B and C:

1. An examination by both parties, of the books and accounts, within two months from the date of the bond and the reaching of a conclusion in this way between them, was not necessary as a condition precedent to a recovery against C.

2. The amount due A had been judicially ascertained by the action of account render, and C having refused to pay this sum on demand, A

was entitled to judgment against him for the amount of the judgment in that suit, with interest thereon and the costs of that proceeding.

3. In this action, the appearance docket entry, and the files in the account render suit, were admissible in evidence; but evidence tending to reduce the amount of the judgment in the account render suit was not admissible.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 124 July Term 1888, Sup. Ct.; court below, 179 February Term 1887, C. P.

Covenant, brought December 27, 1886, by Edward Frost, doing business under the firm name of J. O. Frost's Sons, against E. B. Pierce and John Holmes, on a bond in which Pierce was principal, and Holmes, surety.

At the trial, on April 10, 1888, the following facts appeared:

For some time prior to October, 1883, Pierce had been conducting a business in the borough of Towanda, in his own name, but really as agent for J. O. Frost's Sons, the owners. In October, 1883, the arrangement was terminated. Pierce then had the books and accounts of the business in his possession. In pursuance of an arrangement between the parties, Pierce with Holmes, as surety, gave J. O. Frost's Sons the bond in suit, dated October 13, 1883, which was for $1,500, conditioned as follows:

"Now, the condition of this obligation is such that if the said Pierce shall deliver over to said Frost's Sons, at once, all said books, book accounts, notes, leases, papers, notes and judgments and all cash in the bank, all keys to the store, desks, and furniture, and all property which he may have in his possession belonging to said firm, and shall indemnify and save harmless the said Frost's Sons from all loss and damage sustained by said firm, by reason of any contracts, agreements, sales, purchase or purchases and obligations entered into by said Pierce in the conducting of said business outside of his authority and instructions from said Frost's Sons, in the proper conducting of said business, and will pay to them, their heirs, executors and administrators or assigns, upon demand, any balance that shall appear to be due to said firm of Frost's Sons, after an examination of the books and accounts, and an inventory of

the stock in said store.   The said examination to be concluded within two months from this date.   The said E. B. Pierce shall render all needful instructions and information in the proper settlement of said business and accounts.   The said Pierce shall collect no accounts or receive any money, or pay for bills, notes, leases and accounts due said firm after this date without instructions.   Then, and in that case, this obligation to be void; otherwise to be and remain in full force and virtue."

After receiving the books and accounts in pursuance of the bond, Frost's Sons proceeded to examine the same, without asking any assistance from Pierce, and found an alleged balance of $4,329.29 due them from Pierce.   Of this they gave notice to Pierce and Holmes, and payment having been refused, on January 24, 1884, they brought suit against Pierce and Holmes on the bond.   Upon the suggestion of the court that the bond contemplated a mutual examination of the books and accounts, plaintiffs suffered a voluntary nonsuit in that action.

On October 27, 1884, Frost's Sons brought an action of account-render against Pierce alone; a judgment of quod computet was afterward entered therein, and on September 17, 1885, the court ordered a jury empaneled to settle the accounts of the parties.   On February 13, 1886, by agreement, the cause was referred, and the referee filed an award September 6, 1886, in favor of plaintiffs and against Pierce, for $1,207.29.   This award was duly confirmed by the court, and after failure to collect the same, J. O. Frost's Sons brought this action on the bond.

Defendants demurred to the plaintiffs' declaration on the ground that the bond contemplated a mutual examination of Pierce's books and accounts, and not an examination by the plaintiffs in the absence of the defendants.   This demurrer was overruled.[1]

The plaintiffs offered in evidence the appearance docket entry of the judgment of the plaintiffs against Pierce, in the action of account-render; also the files in the account-render case except the report of the referee.

Objected to, because Holmes was not a party to that suit.

By the court: It appearing that it has heretofore been ruled in this case that the amount due from Mr. Pierce to Frost's Sons should be ascertained by an action of account render, before

proceeding upon this bond, the objection is overruled and the evidence is admitted; exception.[2 to 5]

Defendants offered evidence attacking the judgment for $1,207.29, and tending to reduce it.

Objected to as irrelevant.

By the court: Objection sustained and evidence excluded, on the ground that the judgment on the report of the referee, if evidence at all against Holmes, was conclusive; exception.[6 to 9]

Defendants submitted, inter alia, the following points:

4. The contract of Holmes was to pay " any balance that shall appear to be due," etc., and he cannot be called upon to pay interest until such balance was found, and then only upon such balance.

Answer: We decline to affirm this point.[14]

5. If the jury believe from the evidence in this case, that from the knowledge plaintiffs had of Pierce's manner of conducting their business, they had reason to believe that he had been conducting it fraudulently or dishonestly, and therefore discharged him and took the bond of Pierce and Holmes to secure them for any balance that might be found due Frost's Sons, without disclosing to said Holmes the grounds of such belief and discharge, this would be a fraud upon Holmes, and plaintiffs cannot recover against him.

Answer: We decline to affirm this proposition. If they had known of dishonest transactions in this business conducted by Mr. Pierce for Frost's Sons, by which the amount then due from Pierce to them was enlarged, perhaps they might have been required to make it known to the surety. But in this case, the evidence does not show that Frost's Sons had knowledge of any dishonest transactions on the part of Mr. Pierce, nor does it appear, throughout the subsequent examination of the matter, so far as it is disclosed in court, that any dishonesty on the part of Pierce was ever disclosed. There is nothing in this case to show that the amount for which Mr. Holmes is required to be responsible, was ever increased in any way, or affected by any dishonest transaction on the part of Mr. Pierce. This bond, given by Mr. Holmes had no reference to subsequent services that might be rendered by Mr. Pierce, who was to be placed in a capacity of trust by Frost's Sons. But it had

Charge of Court below.

reference to the settlement of transactions which were then fully consummated, and related entirely to the past, and bound him simply to pay an account that was then actually due from Mr. Pierce, when the amount was ascertained. We do not think there is any evidence in this case which would justify us in submitting to you the question as to whether this bond may not be defeated because of the withholding from Mr. Holmes of some information then in the possession of Frost's Sons as to the dishonesty of Pierce.[15]

6. Holmes cannot be compelled to pay the costs made in the account render suit of Frost's Sons v. Pierce, because said suit was not necessary to find the true balance, and Holmes was not a party or privy thereto.

Answer: We decline to affirm this proposition.[16]

In the general charge, the court, SEELY, P. J., 22d district, holding special term, instructed the jury, inter alia, as follows:

It is argued by the defendants' counsel that the examination provided for in that bond, should be an examination conducted by both of the parties to the transaction, Mr. Pierce and Frost's Sons, by which they should mutually reach a conclusion which should adjust, to their satisfaction between them, the amount due from Mr. Pierce to J. O. Frost's Sons, and that this amount having been so ascertained, would fix the sum for which the surety in this bond should be held responsible; that this examination was to be concluded within two months from the date of the bond; that such an examination, conducted by both parties, by which they should arrive at a result which would be conclusive between them, so fixing the sum for the payment of which Mr. Holmes was to be held responsible, was a condition precedent to the demand upon Mr. Holmes; that without the sum being ascertained in this way, and in this time, there could be no demand made upon Mr. Holmes, and no breach of this covenant could be shown.

We understand that in proceedings between these parties, heretofore, in this court, which have led up to the present proceeding, and upon which in some degree this present proceeding is based, the court has refused to give the contract that construction; that the court has refused to hold that the plaintiff is precluded from recovering against this surety by reason

of not having conducted the examination which it was alleged should have been made in order to hold him. It is clear, from the evidence, that no such examination was ever made, in which the parties joined, and by which the amount was ascertained within two months. It is not alleged, upon either side, that an examination of that character was conducted, within that time. And we think that as this action is so intimately connected with other proceedings which have been had in this court, growing out of this same transaction, it is important that a uniform construction should be given to this bond, in all these proceedings, in order that whatever construction is ultimately held, it shall work to settle fairly and properly the controversy between these parties.

For that reason we have not thought it necessary to give this contract the consideration which we might otherwise think it necessary to do. [But we accept and adopt what we understand to have been the uniform construction of this bond, heretofore, in this court, and we say to you that such an examination of the books and accounts as has been suggested was not necessary as a condition precedent to the recovery against the sureties in this case.] [10]

Verdict for plaintiffs for $1,558.59, and judgment thereon. The defendant Holmes then took this writ assigning as error:

1. The overruling of defendants' demurrer.[1]
2–5. The admission of plaintiffs' offers.[2 to 5]
6–9. The refusal of defendants' offers.[6 to 9]
10. The part of the charge embraced in [ ] [10]
14–16. The refusal of defendants' points.[14 to 16]

*Mr. James Wood* and *Mr. D'A. Overton*, for plaintiff in error.

*Mr. William Maxwell*, for defendants in error.

PER CURIAM:

Judgment affirmed.